IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## STATE OF TENNESSEE v. ABRON SPRAGGINS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-02312     Paula Skahan, Judge**

**No. W2009-01073-CCA-R3-CD  - Filed May 7, 2010**

The defendant, Abron Spraggins, was convicted by a Shelby County Criminal Court jury of aggravated assault, a Class C felony, and reckless endangerment with a deadly weapon, a Class E felony, and was sentenced by the trial court to an effective term of thirteen years in the Department of Correction.  The defendant raises three issues on appeal:  (1) whether the trial court committed plain error by instructing the jury that felony reckless endangerment was a lesser-included offense of aggravated assault as charged in the indictment; (2) whether the evidence was sufficient to sustain the convictions; and (3) whether the trial court erred by enhancing the defendant's aggravated assault sentence and ordering that the aggravated assault and reckless endangerment sentences be served consecutively. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Phyllis Aluko (on appeal) and Michele Lynn (at trial), Assistant Public Defenders, for the appellant, Abron Spraggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alexia Fulgham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of the defendant's actions on October 12, 2007, in which he

threatened with a gun the mother and young siblings of his ex-girlfriend, who had recently given birth to his child. He was subsequently indicted by the Shelby County Grand Jury for four counts of aggravated assault based on his use or display of a deadly weapon to cause Charlesetta Patterson,[1] Camia Patterson, Charles Patterson, and Troy Patterson to reasonably fear imminent bodily injury.

The State's first witness at the defendant's March 2009 trial was Charlesetta Patterson, who testified on direct examination as follows. Her daughter, Ashley Battle, had given birth on September 6, 2007, to a son, Isaac, who had presumably been fathered by the defendant. On October 12, 2007, Isaac was living in Patterson's Memphis home with Patterson and some of Patterson's children, including Camia, who was seven at the time, Charles, who was eight, and Troy, who was ten. At some point that day, Patterson was away from home when her daughter, Andria, telephoned and related some information she had learned from Camia, Charles, and Troy. In response, Patterson called the police and returned home to find the defendant parked in his truck behind her apartment.

Hoping to stall the defendant until the police arrived, Patterson walked to the defendant's truck, where the defendant told her that he wanted to see his son. She refused, and an argument between the two ensued in which the defendant insisted that neither she nor the police would be able to stop him from seeing his son, and she repeatedly told him that she would not allow him to see the child. During the course of that verbal altercation, the defendant reached under his seat, pulled out a gun, and pointed it at her. The defendant also said, "Bitch, I am going to kill you," which frightened her. At about that time, however, three police cars pulled up and the defendant "took off and almost ran into the police car."

On cross-examination, Patterson acknowledged having testified at the preliminary hearing that she was inside the house when the defendant came to her home. She explained, however, that the defendant had come to her home on more than one occasion and that she had been referring to a different incident during her preliminary hearing testimony. On redirect examination, she testified that she had custody of Isaac because his mother left "the day after he came home."

Officer Samuel Stewart of the Memphis Police Department, who responded to the October 12 disturbance call, testified that Patterson, who appeared very frightened, informed him that the defendant had threatened her with a gun, telling her that he was going to kill her and her children if she did not give him his child. Officer Stewart stated that he and his partner checked the area but were unable to locate the defendant.

---

[1] This victim's first name is listed as "Charlesett" in the indictment, but at trial she stated and spelled her first name as "Charlesetta," which is the name we have chosen to use in this opinion.

Twelve-year-old Troy Patterson testified that on October 12, 2007, he and his younger brother, Charles, were walking home from school together when the defendant pulled out a black gun, pointed it at him and his brother, told them he wanted his child, and said that he was going to kill him, his brothers, and their mother. The witness testified that he and Charles ran to the Memphis Housing Authority office, where they remained until their mother came to get them. On cross-examination, he testified that the defendant, who had been slowly following them down the street in his truck, never got out of the vehicle.

Ten-year-old Charles Patterson testified that he and Troy were walking home from school together on October 12, 2007, when the defendant began following them. He stated that the defendant said something to Troy, which he did not hear, and that he and Troy reacted by running to the Memphis Housing Authority office to hide because they were afraid of the defendant. The witness testified that the defendant did not say anything to him and did not point a gun at him.

At the conclusion of the State's proof, the trial court granted the defendant's motion for judgment of acquittal with respect to counts two and three of the indictment, which charged the defendant with the aggravated assaults of Camia and Charles Patterson. The defendant then elected not to testify and rested his case without presenting any proof. Following deliberations, the jury convicted him of the lesser-included offense of reckless endangerment of Charlesetta Patterson and of the indicted offense of aggravated assault of Troy Patterson.

The only evidence introduced at the defendant's April 7, 2009 sentencing hearing was the defendant's presentence report, which reflected that the twenty-nine-year-old defendant had a lengthy criminal history consisting of seventeen prior convictions, including two felonies. At the conclusion of the hearing, the trial court found one enhancement factor applicable, that the defendant had a history of criminal convictions in addition to those necessary to establish his range, see Tenn. Code Ann. § 40-35-114(1) (Supp. 2009), and no applicable mitigating factors. The trial court further found that the defendant met three of the criteria for consecutive sentencing, in that he was an offender whose record of criminal history was extensive, based on his lengthy criminal record; that he was a professional criminal who had knowingly dedicated his life to crime as a major source of his livelihood, based on his conviction for the sale of cocaine, his limited and unsubstantiated work history, and the fact that he reported no history of drug use; and that he was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, based on his "outrageous" actions in pointing a gun at a child and later at his mother. Applying great weight to the sole enhancement factor, the trial court sentenced the defendant as a Range II offender to consecutive terms of three years for the reckless endangerment conviction and ten years for the aggravated assault conviction, for an effective sentence of thirteen years at thirty-five

percent in the Department of Correction.

## ANALYSIS

### I. Lesser-Included Offense Instruction

As his first issue, the defendant contends that the trial court committed plain error by instructing the jury that reckless endangerment was a lesser-included offense of aggravated assault as charged in the indictment. The defendant concedes that he did not raise the issue in his motion for new trial, but argues that it constituted plain error that affected his substantial rights. In support, he points out that our supreme court held in State v. Moore, 77 S.W.3d 132, 135 (Tenn. 2002), that felony reckless endangerment is not a lesser-included offense of an aggravated assault that is committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by the use or display of a deadly weapon. The State cites Demonbreun v. Bell, 226 S.W.3d 321 (Tenn. 2007), to argue that the defendant is not entitled to plain error review because he requested the lesser-included instruction at trial and thereby effectively consented to an amendment of the indictment. We agree with the State.

The doctrine of plain error provides that an appellate court may take notice of an error affecting a substantial right of the defendant, even if not raised at trial or in the motion for new trial, if the error more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. P. 36(b). In order for us to find plain error, "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). A court's discretion to notice plain error is to be "sparingly exercised." State v. Bledsoe, 226 S.W.3d 349, 354 (Tenn. 2007). Furthermore, consideration of all five factors is unnecessary when it is clear from the record that at least one of them cannot be satisfied. Id. at 355.

In Demonbreun, our supreme court reversed this court's granting of habeas corpus relief to the petitioner, concluding that although the petitioner had been convicted of aggravated assault, which was not a lesser-included offense of the charged offense of attempted first degree murder, he had effectively consented to the amendment of the indictment by actively seeking an instruction on the lesser-included offense. The court wrote:

We continue to follow the rule set forth in [State v.] Davenport, 980

S.W.2d [407,] 409 [(Tenn. Crim. App. 1998)], and reaffirmed in [State v.] Stokes, 24 S.W.3d [303,] 306 [(Tenn. 2000)], that we will not presume consent to an amendment to an indictment merely from the defendant's silent acquiescence to a jury instruction based on an incorrect belief that an offense is a lesser included offense. However, we find nothing in Stokes to prevent the court from finding an effective amendment to an indictment where the defendant actively seeks the jury instruction on the uncharged offense. A defendant should not be able to "'complain about convictions on an offense which, without his own counsel's intervention, would not have been charged to the jury.'" [State v.] Ealey, 959 S.W.2d [605,] 612 [(Tenn. Crim. App. 1997)] (quoting [State v. Robert W.] Bentley, [No. 02C01-9601-CR-00038,] 1996 WL 594076, at *2 [(Tenn. Crim. App. Oct. 17, 1996)].

226 S.W.3d at 326.

While it is true that felony reckless endangerment was not a lesser-included offense of the aggravated assaults as charged in the indictment, see Moore, 77 S.W.3d at 135, the record reveals that it was defense counsel who requested the instruction, expressing the erroneous belief that it was an "optional lesser included." The following exchange between the trial court and defense counsel took place at trial:

THE COURT: Any special instructions request?

[DEFENSE COUNSEL]: I had earlier pulled reckless endangerment.

THE COURT: Which one? Involving a gun?

[DEFENSE COUNSEL]: Yes.

THE COURT: I don't have any problem with that. The "E" felony. That's a lesser included.

[DEFENSE COUNSEL]: I think that it's like an optional lesser included, maybe.

THE COURT: Well, I don't think it's an optional, if there is a gun alleged, but we'll check it.

[DEFENSE COUNSEL]: That is the only thing that just stood out to me that I had glanced at earlier to see.

THE COURT: No, if there's not a gun then it's not supposed to be charged, is my understanding, on aggravated assault. But, I think that it would be appropriate in this situation. But anyway we'll go through what the law requires to do.

Because the erroneous jury instruction resulted from defense counsel's actions, we agree with the State that the defendant cannot show that a clear and unequivocal rule of law was breached. Accordingly, we conclude that he is not entitled to plain error review on this issue.

## II. Sufficiency of the Evidence

The defendant next contends that the evidence was insufficient to sustain his convictions because there was insufficient proof that either victim faced imminent danger or threat of harm. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Aggravated Assault Conviction

For the purposes of this case, an aggravated assault is committed when a person intentionally or knowingly commits an assault as defined in section 39-13-101 and uses or displays a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B) (2006). A person commits an assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury. Id. §§ 39-13-101(a)(2); -102(a)(1)(B). A deadly weapon includes "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." Id. § 39-11-106(a)(5)(A). Thus, to sustain the conviction for aggravated assault, the State had to prove beyond a reasonable doubt that the defendant intentionally or knowingly caused Troy Patterson to reasonably fear imminent bodily injury by his display of his gun.

The defendant asserts that his threats should be viewed as "conditional threats of possible future harm rather than imminent harm" because they "were linked to a continuation of the defendant not being allowed to see his purported son." He also characterizes Troy Patterson's testimony that the defendant displayed a gun as "problematic" given Charles Patterson's testimony to the contrary. As such, the defendant argues that the fear that Troy Patterson experienced as a result of "the alleged encounter with the defendant was not caused by a reasonably imminent threat of bodily injury."

We respectfully disagree. Viewed in the light most favorable to the State, the evidence established that the defendant, who was obviously in a volatile emotional state, drove slowly down the street beside the victim and his brother, pointed a gun at him, and said that he was going to kill the victim, his brothers, and the victim's mother. These actions were certainly sufficient for the victim to reasonably fear imminent bodily injury or death at the hands of the defendant. We conclude, therefore, that the evidence was more than sufficient to sustain the defendant's conviction for aggravated assault.

## B. Felony Reckless Endangerment Conviction

The defendant contends that the evidence was insufficient to sustain his reckless endangerment conviction because there was no proof that he "did anything that actually placed [Charlesetta Patterson] in imminent danger of death or serious bodily injury." In support, he points out that there was no testimony that his weapon was fired, loaded, or even operational. He also argues that Charlesetta Patterson's conflicting preliminary hearing

testimony casts doubt on whether the incident she described at trial occurred on the date alleged in the indictment. The State argues that the evidence was sufficient to sustain the conviction, and we agree.

A person commits the offense of reckless endangerment "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code. Ann. § 39-13-103(a) (2006). Reckless endangerment committed with a deadly weapon is a Class E felony. Id. § 39-13-103(b). To demonstrate an imminent danger of death or serious bodily injury, the State must show that the victim was "placed in reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999).

Viewed in the light most favorable to the State, the evidence established that in the course of a heated argument with the victim, the defendant pulled a gun out from under the seat of his vehicle, pointed it directly at the victim, and announced that he was going to kill her. Although there was no evidence that the gun was loaded or operational, there was also no evidence that it was not. Thus, a rational jury could reasonably conclude that the victim was placed in imminent danger of death or serious bodily injury by the defendant's actions in pointing a gun at her during the heated exchange. We conclude, therefore, that the evidence was sufficient to sustain the defendant's felony reckless endangerment conviction.

### III. Sentencing

As his final issue, the defendant contends that the trial court erred by enhancing his aggravated assault sentence to the maximum sentence in the range and ordering that the aggravated assault and reckless endangerment sentences be served consecutively. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e)

the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

## A. Enhancement of Aggravated Assault Sentence

The defendant contends that the trial court erroneously sentenced him to the maximum sentence in the range for his aggravated assault conviction, arguing that the sole enhancement factor found applicable by the trial court did not justify the four-year enhancement of his sentence. In support, he notes that the trial court enhanced his reckless endangerment sentence, based on the same enhancement factor, by only one year. We respectfully disagree.

In imposing a specific sentence within the appropriate range of punishment:

[T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c). Furthermore, the weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

As the State points out, the trial court properly considered the relevant sentencing principles, stated its reasons for enhancing the sentence, and imposed a sentence that was within the applicable range for a Range II offender sentenced for a Class C felony. We conclude, therefore, that the defendant is not entitled to relief on the basis of this issue.

## B. Consecutive Sentencing

Lastly, the defendant contends that the trial court erred by ordering that his sentences be served consecutively.   We respectfully disagree.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of number of criteria by a preponderance of the evidence, including the following three found by the trial court in this case:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

> (2) The defendant is an offender whose record of criminal activity is extensive;

> . . . .

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]

Tenn. Code Ann. § 40-35-115(b) (2006).   These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant.  State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

The defendant argues that the professional criminal criterion should not have been applied because, with the exception of a felony drug conviction, "the record fails to suggest that [he] received any financial remuneration from any criminal activity"; the extensive offender criterion should not have been applied because most of his previous convictions were misdemeanor offenses; and the dangerous offender criterion should not have been applied because there was no proof that his gun was operational and the trial court merely recited the Wilkerson factors without specifically stating on the record the reasons behind its imposition of consecutive sentences under this criterion.

We conclude that the records supports the trial court's imposition of consecutive sentencing under any one of the three criteria found by the trial court.  According to the trial testimony, the enraged defendant followed two young boys home from school, pointed a gun at them and threatened to kill them, parked behind their home, and then pointed a gun at their mother while threatening her life.  Moreover, the criminal history section of the defendant's

presentence report, which includes not only the seventeen criminal convictions but also numerous arrests in cases in which the charges were nolle prosequied, covers almost seven full pages of the report. Furthermore, the only employment history the twenty-nine-year-old defendant reported, which was unverified, consisted of a single year working as a general laborer for two different temporary employment services. Accordingly, we affirm the effective thirteen-year sentence imposed by the trial court.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE